UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE R. HAACK,

    Plaintiff,

v.

    Case No. 23-12273

    Hon. F. Kay Behm

LAPEER COUNTY ROAD
COMMISSION and
ZEBADIAH SCHONS,

    Defendants.
_____/

**OPINION AND ORDER REGARDING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' motion for summary judgment, which has been fully briefed. The court heard oral argument on August 13, 2025, and took the matter under advisement. As explained below, the court finds that Plaintiff has not sufficiently supported his disability discrimination, failure to accommodate, retaliation, or hostile work environment claims, and that summary judgment in favor of Defendants is appropriate.

**I.**  **Factual Background**

Plaintiff Joe R. Haack worked for the Lapeer County Road Commission ("LCRC"), where Defendant Zebadiah Schons was his supervisor. He began working for the LCRC in 1999, when he was hired as

a truck driver. In 2015, Haack was promoted to a working foreman position at the Imlay City garage. The LCRC's foremen are required to hold a valid commercial driver's license.

In April 2016, Haack was working with a team of employees on a road patch crew when his work vehicle was rear-ended. After the accident, Haack filed a worker's compensation claim and was on medical leave for approximately seven months. He experienced back pain, neck pain, headaches, and memory issues as a result of the accident. He returned to work in November 2016 with restrictions, including working only four hours per day and lifting restrictions. These restrictions were accommodated by the LCRC and lasted for about three months.

In 2019, Haack was promoted to the North garage district foreman position, a role in which he supervised eight or nine employees. At this time, Defendant Schons served as Superintendent and Haack's supervisor. Haack allegedly had some performance problems in October 2019; he met with Schons, Erick Pearson, and a union representative to discuss his "issues remembering to turn in paperwork, approve timecards, and attend meetings despite the constant reminders he is given via phone, email, and text." ECF No. 32-7. Haack admitted that he had a "hard time" remembering things since his April 2016 accident. *Id.* At the meeting, they

agreed that "[c]heck lists will be made for Mr. Haack to help keep him stay on schedule." *Id.* Haack requested no further accommodations for his memory issues at that time. ECF No. 32-3 at 130.

Haack was seriously injured in a second automobile accident while at work on April 21, 2021. After the accident, he suffered fatigue; blurred vision; hip, back, neck and wrist pain; leg pain and numbness; and headaches. Haack was off work until May 3, 2021, when he returned to work on a light-duty basis with a driving restriction. ECF No. 32-10. According to his doctor's note, the driving restriction expired as of May 5, 2021. *Id.* During the time Haack's driving was restricted, Schons directed another foreman, Caleb Schank, to drive him to and from work. The LCRC also permitted Haack to attend physical and occupational therapy appointments during working hours, while being paid. Once the driving restriction was lifted, Schons told Haack that Schank would no longer be available to drive him to work or to appointments.

On June 21, 2021, the LCRC changed its policy of allowing employees to attend physical and occupational therapy appointments while on the clock. When informed of this, Haack told Schons that he could not attend his appointments after work because he was "done and completely exhausted" after his shifts. ECF No. 32-11.

3

A meeting was held between Haack, Schons, Pearson, HR Director Tamela Delvecchio, and union president Sherry Mawer to discuss whether Haack's exhaustion presented a safety issue at work. *Id.* Haack admitted that there were days when "needs to take a nap and I would on a dead-end road if I wasn't worried about getting caught because I'm so tired." ECF No. 32-4 at 209. Mawer recalled that Schons was "a little aggressive" and "bullying . . . to a degree" in questioning Haack. ECF No. 32-26 at 19-22. After the meeting, Schons, Pearson, and Delvecchio decided that Haack should be prohibited from driving at work until he could undergo an independent medical examination. ECF No. 32-12. Haack was informed of this decision in a letter dated June 30, 2021. In the meantime, Haack was to report to the office and perform the functions of his job that were not "safety sensitive." *Id.*

On June 30, 2021, the same day he was informed of the driving prohibition, Haack submitted a doctor's note indicating that he was to be off work "until re-evaluated after lumbar x-rays." ECF No. 32-13. Based upon the doctor's note, the LCRC allowed Haack to take medical leave.

Subsequently, Haack's medical leave was extended numerous times based upon doctor's notes submitted on July 21, 2021; September 1, 2021; October 6, 2021; November 15, 2021; December 1, 2021; January 18,

4

2022; January 26, 2022; March 9, 2022; April 20, 2022; June 1, 2022; June 28, 2022; July 13, 2022; and August 10, 2022. ECF No. 32-14. On November 8, 2021, the LCRC requested a "firm date" when Haack thought he could return to work, as "the operational needs of our organization may be incompatible with leave of an indefinite duration." ECF No. 32-15.

Around the same time, the LCRC promoted Caleb Schenk to the district foreman position, although Schons intended that Haack would be returned to his position if he returned from medical leave. ECF No. 32-8 at 88-89. Haack testified that this plan was not communicated to him.

On August 17, 2022, the LCRC sent Haack a letter indicating that it would not be extending his leave indefinitely and that it expected him to work on August 25, 2022, when his most recent doctor's note expired. ECF No. 32-18. But Haack did not return to work on that date, and instead submitted another doctor's note stating that he was to "remain off work for 6 more weeks. The next follow up is 10/03/22." ECF No. 32-19.

The LCRC denied Haack's request to extend his leave, stating that it could not accommodate additional extensions and that it expected him to return to work as of August 25, 2022. ECF No. 32-20. If Haack needed "an alternative accommodation to allow you to perform all the essential

5

functions of your job other than unpaid leave," he was to inform the LCRC of the nature of those accommodations. *Id.*

Haack did not report for work or request an alternative accommodation; he believed that his union contract entitled him to 24 months of unpaid medical leave. On September 1, 2022, the LCRC terminated Haack's employment, stating that it was unable to continue holding a position vacant or provide indefinite leave due to "operational demands." ECF No. 32-21. Haack does not dispute that he was unable to return to work, with or without an accommodation, as of August 2022. ECF No. 33 at PageID.1369. As of April 26, 2023, Haack's physician continued to recommend that he remain off work, until at least May 27, 2023. ECF No. 32-23.[1]

Haack challenged his termination by filing a union grievance based upon his belief that he was entitled to 24 months of leave, but he withdrew

---

[1] At the hearing, Plaintiff's counsel stated for the first time that Haack could have returned to work in October 2022, and provided a note signed by Miguel Luciano, PA-C, indicating that he could "return to work with restrictions as of October 5, 2022." ECF No. 36. This is contradicted by the note provided by Dr. Gordon McClimans, stating that Plaintiff was examined on October 3, 2022, and needed "to remain off work for an additional 6 weeks." ECF No. 37-1 at PageID.1469. Subsequent records indicated that Plaintiff was to remain off work until June 2023. *Id.* at PageID.1470-75. In any event, Plaintiff's new evidence does not create a genuine issue of material fact: Plaintiff was undisputably not cleared to return to work at the time his employment was terminated, and there is no evidence the LCRC was informed that he could return to work on any specific date.

the grievance before it was adjudicated. He also filed an EEOC charge and received a right-to-sue letter in June 2023. Haack filed this action in September 2023, alleging discrimination in violation of the Americans with Disabilities Act; retaliation in violation of the ADA, Whistleblowers' Protection Act, and Workers' Disability Compensation Act; and a hostile environment claim pursuant to the Michigan Persons with Disabilities Civil Rights Act. ECF No. 13 (Amended Compl.).

II. <u>Analysis</u>

A. **Summary Judgment Standard**

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

7

must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the [non-moving party].'" *Brown v. Scott*, 329 F. Supp.2d 905, 910 (E.D. Mich. 2004). To fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence

8

supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251. The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### B. ADA Discrimination Claim

To establish a prima facie case of disability discrimination, an employee must demonstrate that "(1) she has a disability, (2) she is otherwise qualified for the job with or without reasonable accommodation, (3) she suffered an adverse employment decision, (4) her employer knew or had reason to know of her disability, and (5) her position remained open, or she was replaced." *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566-67 (6th Cir. 2023). An adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities," *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996), but rather "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

The ADA protects "qualified individuals," who "with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds or desires." *Stanley v. City of Sanford, Fla.*, 145 S. Ct. 2058, 2063 (2025). A "plaintiff's sworn assertion" that he is "'unable to work' will appear to negate an essential element" of his ADA claim. *Id.* at 2065.

Here, Plaintiff claims that he was discriminated against when the LCRC posted his job and replaced him while he was on leave and subsequently terminated his employment. It is not clear that the posting and filling of Plaintiff's position constituted an adverse employment action, as the LCRC claims that it did not intend for this to prevent Plaintiff from returning to work. Regardless, at no relevant time – either when Plaintiff's position was filled or when his employment was terminated – was Plaintiff cleared to return to work by his physician. Because he was unable to work, he was not qualified and cannot state a prima facie case of disability discrimination. *See id.*; *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (the plaintiff was not qualified "because she was not released by her doctor to return to work" and "gave no indication as to when she would be able to return to work"). Although Plaintiff argues (with

little evidence[2]) that he could have returned to work during the two-year period allegedly provided by his union contract, he has not provided authority that the LCRC was required under the ADA to allow him to take two years of leave.

### C. ADA Failure to Accommodate Claim

To establish a failure to accommodate claim, the plaintiff bears the burden of establishing that (1) she is disabled; and (2) she is "otherwise qualified" for the position, either without an accommodation, with an alleged "essential" job requirement eliminated, or with a reasonable accommodation. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811–12 (6th Cir. 2020). The employer bears the burden of proving that a challenged job requirement is essential or that a proposed accommodation will cause an undue hardship, and it is the employee's burden to demonstrate that he proposed a reasonable accommodation. *Id.; see also Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023)

Plaintiff argues that the LCRC should have accommodated him by providing additional leave. However, the ADA does not require an employer to provide leave of an indefinite duration, which is not a reasonable accommodation as a matter of law. "[W]hen the requested accommodation

---

[2] *See* note 1, *supra*.

has no reasonable prospect of allowing the individual to work in the identifiable future, it is objectively not an accommodation that the employer should be required to provide." *Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000). The LCRC granted multiple extensions of Plaintiff's medical leave for over a year. Under the circumstances, when "an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation." *Id.* The LCRC did not violate the ADA by refusing to extend Plaintiff's leave indefinitely. *See also Maat v. Cnty. of Ottawa, Michigan*, 657 F. App'x 404, 412 (6th Cir. 2016) ("Importantly, where an employer has already provided an employee with a lengthy period of medical leave, an extension to that leave can be a reasonable accommodation only when its duration is definite.").[3]

### D. Retaliation

Plaintiff alleges that he was retaliated against in violation of the ADA, Michigan Whistleblowers' Protection Act, and Michigan Workers' Disability Compensation Act. Under each of these statutes, retaliation claims are analyzed pursuant to the *McDonnell-Douglas* burden-shifting framework.

---

[3] To the extent Plaintiff argues that he suffered disparate treatment because others were permitted to take longer leaves and then resign or retire, he fails to support these allegations with evidence or citations to the record. ECF No. 33 at PageID.1375.

*See A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) (ADA); *Debano-Griffin v. Lake Cnty.*, 493 Mich. 167, 175, 828 N.W.2d 634, 638 (2013) (WPA); *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 470, 606 N.W.2d 398, 404 (1999) (WDCA).

To establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) the defendant was aware of the protected activity; (3) he suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 588 (6th Cir. 1998). A causal connection is shown when "'but for' an employee's statutorily protected activity the employer would not have taken the 'adverse employment action.'" *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citation omitted). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for its actions. Then burden then shifts back to the plaintiff to demonstrate that the employer's reasons are pretextual. *See A.C.*, 711 F.3d at 697.

Here, it appears that Plaintiff is claiming that his protected activities were the filing of workers' compensation claims and the taking of his

13

medical leave.[4] He also told Schons that he would be filing an EEOC claim, although the timing of this conversation is not clear. ECF No. 33 at PageID.1409 (undated message). In any event, Plaintiff has failed to articulate a causal connection between any alleged protected activity and his termination. *See* ECF No. 33 at PageID.1377-79. The LCRC granted Plaintiff an extended medical leave of over one year and terminated his employment when he did not return to work. There is no evidence, for example, that any decision maker reacted negatively to Plaintiff's leave or harbored discriminatory animus. To the extent Plaintiff relies upon temporal proximity to establish causation (that he was terminated while on leave), that alone is insufficient. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 471-72 (6th Cir. 2012) (in the retaliation context, the Sixth Circuit has "repeatedly cautioned against inferring causation based on temporal proximity alone"); *Debano-Griffin*, 493 Mich. at 177 (a "temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action").

Moreover, Plaintiff has not cast doubt on the reason for his termination – that he did not return to work. It is undisputed that Plaintiff

---

[4] It is not clear how Plaintiff's activity was protected by the Whistleblowers' Protection Act; Defendants do not dispute the issue and Plaintiff's briefing does not elaborate.

was unable to return to work at that time or at any definite point in the future. Accordingly, even if Plaintiff could demonstrate a causal connection, he has not shown that the LCRC's reason for terminating his employment was pretextual.

### E. Hostile Work Environment

Plaintiff also alleges a hostile work environment, in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

> In order to establish a prima facie case of hostile work environment, a plaintiff must prove: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Downey v. Charlevoix Cty. Bd. of Rd. Comm'rs*, 227 Mich. App. 621, 629, 576 N.W.2d 712, 716 (1998) (citing *Radtke v. Everett,* 442 Mich. 368, 382-383, 501 N.W.2d 155 (1993) and *Quinto v. Cross & Peters Co.,* 451 Mich. 358, 368-369, 547 N.W.2d 314 (1996)). A hostile work environment exists if the unwelcome conduct is sufficiently "severe or pervasive." *Quinto*, 451 Mich. at 369; *see also Hrdlicka v. Gen. Motors, LLC,* 63 F.4th 555, 566 (6th Cir. 2023) (noting that the PWDCRA "substantially mirrors" the ADA and

claims under these statutes are "generally analyzed identically"). "Courts must examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mazur v. Wal-Mart Stores, Inc.*, 250 F. App'x 120, 128 (6th Cir. 2007) (analyzing claim under PWDCRA).

Haack alleges that Schons subjected him to "unwelcome disability-related words and conduct," specifically at "the humiliating meeting where Defendant Schons bullied Plaintiff in front of others and took away his driving privileges." ECF No. 33 at PageID.1381. In response to Defendant's discovery requests, Plaintiff stated, "I was called repeatedly, texted repeatedly, and emailed repeatedly several times in one day. This occurred frequently. Even when I used sick, comp, vacation, and personal time. This happened on my personal phone and work phone, email, and tablet. I do not have access to my work phone, tablet and email. Zeb even had other employees calling me." ECF No. 32-27, 32-28.

Plaintiff provides no evidence that these repeated contacts were harassment based upon his disability, nor does he provide specifics

16

regarding the alleged bullying at the meeting.[5] The text messages Plaintiff provided in support of his claim are objectively innocuous and do not suggest disability-related animus. ECF No. 32-28 ("Call me please"; "Call me"; "did it work out ok?"; "Hi Joe. Are you working tomorrow?"). Viewed in the light most favorable to Plaintiff, the conduct about which he complains is neither based upon disability nor sufficiently severe or pervasive to constitute a hostile work environment.

### III. Conclusion

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment is **GRANTED.**

**SO ORDERED.**

Dated: August 19, 2025               s/F. Kay Behm
                                     F. Kay Behm
                                     United States District Judge

---

[5] Sherry Mawer testified that she considered Schons to be "aggressive" and "bullying … to a degree," in the meeting, but was unable to provide specifics. ECF No. 32-26 at 19-21 ("just the whole process . . . just the questioning").